**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**THERESA S.,**

> **Plaintiff,**

> **v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**

> **Defendant.**

Civ. No. 21-19997 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Theresa S. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). She argues that the ALJ's determination that she is not disabled as defined by Title II of the Social Security Act was not supported by substantial evidence. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I.   BACKGROUND[1]**

Theresa S. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on February 15, 2019. She claimed a period of disability beginning on September 27, 2018, based on depression, bipolar disorder, anxiety, and post-traumatic stress disorder, as well as physical impairments including diabetes, sleep apnea, high blood pressure, right foot

---

[1]   Citations to the record are abbreviated as follows:

DE = docket entry

R. _ = Administrative Record (DE 6)

Pl. Br. = Theresa S.'s corrected moving brief (DE 17-1)

SSA Br. = the Commissioner's responding brief (DE 18)

Pl. Reply = Theresa S.'s reply brief (DE 21)

and knee pain, and obesity. (R. 16.) Her application was denied initially and upon reconsideration. (R. 14.) On May 19, 2020, she had a hearing before an Administrative Law Judge ("ALJ") to review her application de novo. (R. 28-60.) ALJ Ricardy Damille heard testimony from the plaintiff, who was represented by counsel, and from a vocational expert ("VE"). On June 26, 2020, ALJ Damille issued a decision finding that Theresa S. has the residual functional capacity to perform a full range of work at all exertional levels subject to certain nonexertional limitations. (R. 14-23) The Appeals Council denied Plaintiff's request for review on October 7, 2021, rendering the ALJ's decision a final decision of the Commissioner. (R. 1–6) This appeal followed.

## II.  DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c),

416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual

findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ Damille undertook the necessary step-by-step inquiry.

### Step 1

The ALJ concluded that Theresa S. had not engaged in substantial gainful activity from September 27, 2018, the alleged onset date. (R. 16.)

### Step 2

The ALJ found that through the date last insured, Theresa S. had the following severe impairments: depression, bipolar disorder, anxiety, and post-traumatic stress disorder. (R. 16 (citing 20 CFR 404.1520(c).)

Appropriately citing to the medical evidence and administrative record, the ALJ found that the following claimed conditions did not impose more than a slight vocational limitation on the claimant's ability to perform work related activity for 12 consecutive months, and hence were not severe: "diabetes, sleep apnea, high blood pressure, right foot and knee pain, and obesity (BMI 39)." (R. 16–17.)

### Step 3

With respect to the impairments found to be severe, the ALJ determined that Theresa S. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.) In particular, the ALJ's discussion of the evidence focused on Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).[2]

---

[2]     A claimant's mental disorder meets or medically equals Listings 12.04, 12.06, or 12.15 when it satisfies "paragraph A" criteria and either "paragraph B" or "paragraph C" criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04, 12.06, 12.15. Acknowledging the presence of paragraph A criteria given Theresa S.'s medical documentation, the ALJ examined whether paragraph B or paragraph C criteria were met.

To satisfy Listing 12.04, 12.06, and 12.15's paragraph B criteria, a claimant must demonstrate extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others, (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.*

To satisfy Listing 12.04's paragraph C criteria, a claimant must demonstrate that she has a medically documented history of the existence of the disorder over a period of at least 2 years and that there is evidence of both of the following: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of your mental disorder; and (2) marginal adjustment, that is, the claimant has minimal capacity to

The ALJ found that the criteria matching paragraph B of these listings are not met because Theresa S.'s mental impairments do not cause at least two "marked" limitations or one "extreme limitation" as must be found under the regulation. The ALJ found that Theresa S. has only a "mild" limitation with respect to understanding, remembering, or applying information because although Theresa S. testified that she had trouble with memory and focus, medical evidence from her psychiatric care provider indicated that she had good memory. (R. 17.) The ALJ found that Theresa S. has only a "mild" limitation with respect to interacting with people given the evidence in the record that shows she is able to interact with her friend who is her caretaker, she is able to communicate with family members and attend her doctor's appointments, and she was able to travel to Florida for vacation in October 2018. (R. 17.) Slightly more significant were the limitations ALJ found Theresa S. has with respect to managing oneself, as well as concentrating, persisting or maintaining pace. The ALJ found that Theresa S. had a moderate limitation on her ability to concentrate, persist or maintain pace given her difficulty with completing tasks, concentrating, and following instructions, as she indicated in her Function Report. (R. 18.) The ALJ further found that Theresa S. has a "moderate" limitation on her ability to adapt and manage herself, crediting her testimony that she receives assistance from her best friend who cleans, goes grocery shopping, and does laundry for her, as well as Theresa S.'s testimony that she does not get dressed and has to be told to take a shower. (R. 18.)

---

adapt to changes in environment or to demands that are not already part of daily life. *Id.*

A claimant has an "extreme" limitation in a mental area where she is unable to "function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00. A claimant has a "marked" limitation where such functioning is "seriously limited." *Id.* A claimant has a "moderate limitation" where such functioning is "fair," and a "mild limitation" where such functioning is "slightly limited." *Id.*

The ALJ also noted that he considered the paragraph C criteria and found that the evidence also fails to establish that these criteria are met. (R. 18.)

Finding that neither the paragraph B nor the paragraph C criteria were met, the ALJ moved onto Step 4 and the analysis of Theresa S.'s residual functional capacity.

### RFC and Step 4

Next, ALJ Damille defined the claimant's RFC:

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She cannot operate a motor vehicle. She must avoid all exposure to hazards such as machinery and heights. She is able to understand, remember and carry out simple instructions. She is restricted to work involving few if any work place changes and occasional decision making. She would be absent from work one day per month.

(R. 18.) The ALJ analyzed at length the evidence supporting that RFC determination. (R. 18–23.)

Based on the RFC, the ALJ concluded at Step 4 that Theresa S. is unable to perform any past relevant work, specifically her previous work as a veterinary technician and animal caretaker. (R. 21.) As required, the ALJ considered Theresa S.'s position both as she actually performed it and as it is generally performed.

### Step 5

Considering Theresa S.'s age, education, work experience, and RFC, the ALJ concluded at Step 5 that there are jobs available that Theresa S. can perform. (R. 22.) The ALJ noted that Theresa S.'s ability to perform work at all exertional levels has been compromised by certain nonexertional limitations but found that based on the testimony of the VE and the information contained in the Dictionary of Occupational Titles, Theresa S. is capable of making a successful adjustment to other

work that exists in significant numbers in the national economy, directing a finding that she is not disabled. (R. 22-23.)

## III. DISCUSSION

In her appeal, Theresa S. asserts four arguments challenging the ALJ's underlying decision: (a) the ALJ's mental RFC assessment was not supported by substantial evidence; (b) the ALJ's finding that the opinion of Theresa S.'s treating psychiatrist was unpersuasive was not supported by substantial evidence; (c) the ALJ erred by improperly evaluating Theresa S.'s allegations and substantive complaints; and (d) the ALJ's finding that Theresa S.'s diabetes is not a severe impairment was not supported by substantial evidence.

### A. Whether the ALJ's RFC assessment was supported by substantial evidence.

Theresa S. argues that the ALJ's RFC assessment was flawed in three ways. She contends that the assessment was not supported by substantial evidence because it 1) fails to address Theresa S.'s need for a caregiver; 2) fails to account for the extent of her limitations in interacting with others; and 3) fails to properly consider the lay evidence from Theresa S.'s husband. (Pl. Br. at 17.) I address each of these issues in turn.

#### 1. Need for a Caretaker

During a disability evaluation, an ALJ considers the support an individual receives in order to function. The relevant regulation provides the following explanation as to how the Administration considers such assistance:

**How do we consider psychosocial supports, structured settings, living arrangements, and treatment?**

1. General. Psychosocial supports, structured settings, and living arrangements, including assistance from your family or others, may help you by reducing the demands made on you. In addition, treatment you receive may reduce your symptoms and signs and possibly improve your functioning, or may have side effects that limit your functioning. Therefore, when we evaluate the effects of your mental disorder and rate the limitation of your areas of mental functioning, we will consider the kind and extent of supports you receive, the characteristics of any structured setting in which you spend your time, and the effects of any treatment. This evidence may

8

come from reports about your functioning from you or third parties who are familiar with you, and other third-party statements or information. Following are some examples of the supports you may receive:

. . .

a. You receive help from family members or other people who monitor your daily activities and help you to function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(1).

Theresa S. argues that the ALJ erred by failing to account for Theresa S.'s need for a caretaker in the residual functional capacity assessment. (Pl. Br. 18-20.) She argues that her need for a caretaker clearly shows that she is unable to work independently on a sustained basis. (*Id.*) Her argument is undermined both by the ALJ's decision as well as by the evidentiary record. It is clear from the underlying decision that ALJ Damille specifically considered the support Theresa S. receives from her best friend, who she testified is her caretaker. The ALJ noted in the underlying decision that Theresa S.'s best friend comes to see her, cleans, goes food shopping for her, and does laundry. (R. 18.) The ALJ also acknowledged that Theresa S.'s best friend assists her with taking her medication. (R. 19.) Without more, the fact that Theresa S. testified that her best friend assists her with household activities does not require that the ALJ address this in his statement of Theresa S.'s RFC, nor does it demand a finding that Theresa S. is unable to work independently. It certainly must be helpful to Theresa S. to have this support at home, and her friend's kindness is commendable. There is nothing in the record, however, that suggests this assistance is *medically* necessary. The record does not contain any evidence that Theresa S. raised the need for a caretaker with her doctor or that a doctor otherwise prescribed or recommended it.[3]

---

[3]      Indeed, the bulk of the evidence in the record regarding Theresa S.'s purported need for a caretaker comes from her own subjective allegations. The ALJ is granted

Moreover, there is no other evidence in the record that would warrant a different conclusion. Granted, the transcript from Theresa S.'s hearing before the ALJ contains a handful of additional details regarding the help Theresa S.'s best friend provides that are not explicitly mentioned in the ALJ's decision— *e.g.*, preparing and dating meals for Theresa S., taking her to go shopping, and looking after her dogs (R. 43-48)—but none of these details bear so significantly on Theresa S.'s ability to work independently that it would be reasonable to find the ALJ erred by failing to analyze them. In fact, the balance of Theresa S.'s testimony supports the ALJ's analysis in that it suggests Theresa S. does not necessarily require a caretaker. When asked to explain why she needs her best friend to visit and assist her, Theresa S. stated that it is because her "husband works and feels more comfortable that she comes in to see me." (R. 43.) When asked to elaborate on what her best friend does for her, Theresa S. stated that her best friend "pretty much runs [her] house." (R. 48.) Theresa S.'s characterization suggests that the assistance her best friend provides is not so clearly necessary that it demands a different RFC analysis.[4]

The ALJ did not commit error in his assessment of the psychosocial support Theresa S. receives from her best friend.

## 2. Limitation in Interacting with Others

Theresa S. challenges the ALJ's finding that she has a mild limitation in the domain of interacting with others.[5] (Pl. Br. 20.) She contends that the ALJ's

---

great deference in evaluating such statements (*see* Section III.C. *infra*), and that evaluation here is proper.

[4]    In considering the psychosocial supports a claimant receives, the Administration does not strictly view such support as indicative of functional limitation. The Administration also considers how "assistance from your family or others may help you by reducing the demands made on you." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(1).

[5]    To be clear, Theresa S. characterizes her argument as pertaining to the ALJ's RFC assessment, and she eventually raises RFC-related issues, but the ALJ's finding that Theresa S. has a mild limitation when it comes to interacting with others occurred at Step 3 of the five-step analysis, immediately preceding the RFC assessment.

finding was flawed because it was based on evidence that Theresa S. "is able to interact with her friend, who is her caretaker; communicate with family members; attend her doctor's appointments; and travel to Florida for vacation in October 2018." (*Id.* (quoing R. 17).) According to Theresa S., this finding is unsustainable given her view that "the record documents that [Theresa] stays home, only leaving her house when necessary, and has a caretaker with her at all time," indicating that the ALJ should have at least found a moderate or marked limitation.[6] (Pl. Br. 22-23.)

That said, Theresa S. cites no substantial medical evidence that suggests she has any limitation with respect to interacting with others, let alone one more severe than the mild limitation the ALJ found. Based on the evidence before him, the ALJ conscientiously identified events, activities, and testimony that allowed him to draw inferences about the extent of Theresa S.'s functional limitation. The evidence of Theresa S.'s ability to interact with her best friend on a regular basis, attend her doctor's appointments, attend a birthday party, and travel to Florida on vacation all substantially inform a determination of the extent of her limitation. Theresa S. makes a valid point that other evidence in the record suggests some limitation does exist, particularly the evidence of Theresa S.'s tendency to isolate at home, but that does not alone warrant a finding that she has a more severe limitation than the one found by the ALJ.[7] In fact, considering the absence of medical evidence to support a moderate or marked limitation, the ALJ's ultimate determination that she has a mild

[6]    I note that the statement that Theresa S. "has a caretaker with her at all times" (Pl. Br. 23) mischaracterizes the evidence. Theresa S. testified that her best friend comes to see her frequently; she did not state that she has a caretaker with her at all time. (*See* R. 43 ("She started coming over after the accident just to be supportive and then after that, we don't pay her. She's my best friend. She started coming over probably three weeks to a month after the accident, five times a week. And if I have to go weekends.").)

[7]    This is further supported by evidence that suggests the primary reason for Theresa S. remaining at home is not an inability to interact with other people, but rather the anxiety she experiences while driving or riding in a car. (*See, e.g.,* R. 240 ("I stay at home for fear of driving since I was hit by a lady that ran a stop sign.").)

limitation—as opposed to no functional limitation at all—shows that the ALJ credited this evidence and weighed it accordingly.[8]

Theresa S. separately argues that the ALJ's RFC assessment is inconsistent with his finding that she requires a low-contact work environment. (Pl. Br. at 24.) She points out that the need for a low-contact environment is not accounted for in the RFC. (*Id.*) To level set, the ALJ's finding that Theresa S. requires a low-contact work environment is consistent with his finding at Step 3 that she has a mild limitation with respect to interacting with other people, even if he did not reiterate this finding in his RFC statement. Nevertheless, Theresa S.'s argument betrays her own position. She purports to have unearthed an erroneous inconsistency in the ALJ's decision. That inconsistency, she says, is that the ALJ's determination at Step 5 that she is capable of working certain jobs subject to a certain environmental limitation does not follow from the RFC assessment, which she claims found that Theresa S. has no such limitations. It would follow, then, that to remedy such an inconsistency, the ALJ would have had to find that she does not need *any* environmental limitations in the workplace. Such a finding would suggest that there are even more jobs in the national economy that Theresa S. can perform, weakening her case.

---

[8]      Notably, if the ALJ did find that Theresa S.'s limitation with respect to interacting with people was moderate or marked, it would not have changed the ultimate outcome of the ALJ's analysis. At Step 3, the ALJ determined that Theresa S. had only mild or moderate limitations with respect to the four criteria in paragraph B of Listing 12.04, 12.06, and 12.15. (R. 17 (mild limitation with respect to understanding, remembering, or applying information; mild limitation with respect to interacting with people; moderate limitation on ability to concentrate, persist or maintain pace; and moderate limitation on ability to adapt and manage oneself).) To satisfy Listing 12.04, 12.06, and 12.15's paragraph B criteria, a claimant must demonstrate *extreme limitation of one*, or *marked limitation of two*, of these four areas of mental functioning. 20 CFR §§ 404.1520(b), 416.920(b). Therefore, even if the ALJ committed error by failing to find that one limitation was moderate or marked, it would be harmless error because it would not result in the analysis ending at Step 3 in favor of the claimant.

In sum, I find that the ALJ's finding that Theresa S. had a mild limitation with respect to interacting with others, and his incorporation of that finding into his RFC and Step 5 assessments, were proper and supported by substantial evidence.

### 3. Lay Evidence from Spouse

Theresa S. argues that the ALJ erroneously failed to explain how he considered statements of Theresa S.'s husband in his RFC assessment. (Pl. Br. at 27-29.) Theresa S. premises her argument on outdated law, under which an ALJ was previously required to articulate in their decisions how they considered evidence from a nonmedical source using the same framework that applies to medical opinions from medical sources. This requirement is no longer in effect, per subsequent regulation. *See* 20 C.F.R. § 404.1520c(d); *see also Hildebrandt v. Comm'r of Soc. Sec.*, No. CV 21-13552, 2022 WL 2980992, at *5 (D.N.J. July 28, 2022) ("However, the ALJ was not required to reference [the spouse's] submissions in constructing Plaintiff's RFC because, as noted above, a spouse is not a medical source.").

To reject a medical opinion, the ALJ must point to "contradictory medical evidence." *Cunningham v. Comm'r of Soc. Sec.*, 507 Fed. App'x 111, 118 (3d Cir. 2012). Where the ALJ discounts, rather than rejects, medical opinion evidence, the ALJ must "consider all the evidence and give some reason for discounting the evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). *See generally* 20 C.F.R. § 414.1520c(a)–(c).

As to evidence from nonmedical sources, however, under the rules amended effective March 27, 2017, an ALJ is not required to apply that analytical framework:

> **§ 404.1520c How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.**
>
> . . .

13

> (d) Evidence from nonmedical sources. We are not required to articulate
> how we considered evidence from nonmedical sources using the
> requirements in paragraphs (a) through (c) in this section.

20 C.F.R. § 414.1520c(d). In particular, an ALJ is not required to "weigh" or
"assess" such nonmedical evidence, articulating reasons for assigning it
specific persuasive value, as in the case of medical evidence. Of course, the
amended regulation's non-articulation principle does not permit an ALJ to
decline to consider nonmedical evidence:

> While the Court agrees that the new regulations do not authorize
> an ALJ to disregard all relevant evidence from third parties all
> together, under those regulations, the ALJs need not articulate
> how they considered such evidence with the same type of
> requirements for medical opinions and prior administrative
> medical findings.

*Aguiar v. Kijakazi*, No. CV 20-18551 (FLW), 2022 WL 462093, at *9 (D.N.J. Feb.
15, 2022). "While the new rules relieve ALJs from the burden of articulating
their consideration of nonmedical source statements using the same standards
that apply to medical opinions and prior administrative medical findings, 20
C.F.R. § 416.920c(d), that does not constitute permission to ignore relevant
evidence." *Fisher v. Comm'r of Soc. Sec.*, No. 20-1467, 2021 WL 4288313, at *5
(W.D. Pa. Sept. 21, 2021).

Here, it is clear from the underlying decision that the ALJ did consider
the evidence from Theresa S's husband:

> On March 31, 2019, the claimant's husband [] completed a third
> party function report and stated that the claimant has difficulty
> with talking, hearing, stair climbing, memory, completing tasks,
> concentration, understanding, following instructions and getting
> along with others. However, she is able to do minimal chores with
> help; rarely drive as needed; and shop in stores. [He] stated that
> the claimant uses a cane when feeling dizzy.

(R. 21.) The ALJ committed no error by declining to articulate how persuasive
he found these statements.

*     *     *

In sum, I affirm the ALJ's RFC assessment and find that it is supported by substantial evidence in the record.

**B. Whether the ALJ's finding that the opinion of Dr. Kloupar, Theresa S.'s treating psychiatrist, is "not persuasive" was supported by substantial evidence.**

Theresa S. contends that the ALJ's finding that the opinion of Dr. Kloupar, Theresa S.'s treating psychiatrist, was "not persuasive" was not supported by substantial evidence. (Pl. Br. at 32.) The opinion, in a letter dated January 17, 2019, reads as follows:

> Theresa [S.] is a patient under my care. She was first seen December 21, 1999, and is seen for Medication Management every 2-4 months, most recently on January 17, 2019. She carries the diagnosis of F31.4 Bipolar disorder, current episode depressed, severe. On September 27, 2018 Theresa was involved in a Motor Vehicle Accident. Due to the accident Theresa is experiencing an increase in her symptoms and her condition is worsening. Since the accident her depression affects her daily, she feels hopeless and has lost interest in most things she previously enjoyed. [Theresa S.] feels fatigued daily but is unable to sleep. She has been experiencing anxiety and severe panic attacks, especially when she attempts to drive. Due to her condition and severe panic attacks she is unable to work.

(R. 235.) The ALJ stated in his decision that "This opinion is not persuasive. I note less than significant mental examinations, functional [activities of daily living] and evidence of stable mood on several medical visits." (R. 21.)

The Commissioner's consideration of medical opinions is guided by the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization of the medical source; and 5) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). However, the "supportability" and "consistency" of the opinion are considered the most important factors for the Commissioner's consideration. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Indeed, while the ALJ may explain his or her consideration of the other factors, the ALJ must explain how he or she considered the "supportability" and "consistency" of a

medical source's opinion. *Id.* Nevertheless, the ALJ need not rely on a specific medical opinion, as the ALJ makes the ultimate disability and RFC determinations.

As an initial matter, the ALJ's consideration of a medical opinion, by definition, pertains to how that opinion bears on the claimant's functional abilities. *See* 20 C.F.R. § 404.1513(a)(2). Critically, Dr. Kloupar's opinion offers no evaluation of Theresa S.'s functional ability, save for his statement that "she is unable to work." (R. 235.) And the ALJ need not credit such statements by medical professionals that opine on issues reserved for the determination of the Commissioner. A statement by a medical professional that a claimant is unable to work is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). The ALJ therefore had no obligation to analyze or adopt Dr. Kloupar's conclusion. The ALJ's finding that this statement was not persuasive is perfectly consistent with his responsibility under the regulation.

More broadly, I find that the ALJ Damille's explanation of the "supportability" and "consistency" of Dr. Kloupar's opinion both 1) complied with the governing regulations and 2) is supported by substantial evidence.[9] The ALJ noted "less than significant mental examinations" and "evidence of stable mood on several medical visits." (R. 21.) This is an accurate description of the body of treatment notes in the record. As the Administration identifies in its responsive brief, the record contains evidence of at least 20 mental examinations of Theresa S. that were "unremarkable with stable findings." (SSA Br. at 20.) Several of Dr. Kloupar's treatment notes document Theresa S. presenting with good mood and good mental function. *See, e.g.,* R. 410 (noting healthy appearance, cooperative demeanor, appropriate behavior, good eye contact, appropriate affect, normal speech, good impulse control, good memory, good concentration, good judgment, good attention span, good

---

[9]     Granted, the ALJ did not explicitly segregate the evidence of "supportability" from that of "inconsistency." Nevertheless, the evidence noted by the ALJ clearly addressed both factors.

insight, and a thought process that was goal oriented, coherent, relevant and logical); 413 (same); 414 (same).

So far, so good. In her appeal brief, however, Theresa S. stresses the episodic nature of her bipolar disorder. Ehe "has good days and bad days," she says, and her periodic displays of good mental function are not inconsistent with a severely impairing bipolar disorder. (Pl. Br. 36-37.) But the ALJ acknowledged Theresa S.'s bipolar disorder and identified it as one of her "severe impairments" at Step 2 of his five-step analysis pursuant to 20 CFR 404.1520(c). After doing so, the ALJ was required to consider all the record evidence to determine the severity of her impairment, and there is a significant number of mental health examinations that show Theresa S. frequently presented with good mood and good mental function, weighing against the supportability and consistency of Dr. Kloupar's opinion. *See, e.g.,* R. 513 (finding normal behavior, normal mood, normal cognition, and no danger to self or others); R. 513 (same); R. 514 (same); R. 515 (same); R. 517 (same); R. 518 (same); R. 519 (same); R. 520 (same); R. 522 (same); R. 524 (same); R. 525 (same); R. 527 (same); R. 528 (same); R. 529 (same); R. 531 (same); R. 533 (same); R. 534 (same); R. 535 (same); R. 536 (same); R. 514 (same aside from notation of pleasant behavior as opposed to normal behavior).

The ALJ also cited evidence of "functional [activities of daily living]" as a reason for his finding that Dr. Kloupar's opinion was unpersuasive. (R. 21.) This is also supported by substantial evidence and weighs against the supportability and consistency of Dr. Kloupar's opinion. The record contains evidence of many activities of daily living. For instance, there is evidence that Theresa S. traveled to Florida for vacation (R. 316); attended a birthday party (*Id*.); regularly walked around her seven-acre yard (R. 45, 48); and did some work around her house, including taking care of her dogs (R. 45). Moreover, her husband's statements shed additional light on the daily activities Theresa S. is capable of doing. In his third party function report, he indicated that Theresa S. can shop in stores, do some physical chores with help, and even drive occasionally when necessary. (R. 21, 198-200.) While these activities do

not themselves prove that Theresa S. is capable of performing all jobs at all exertion levels in all settings, they provide substantial evidence to support the ALJ's evaluation of Dr. Kloupar's opinion, as well as his RFC assessment more broadly.

Accordingly, based on the evidence in the record and the ALJ's stated reasons, I find that the ALJ's determination that Dr. Kloupar's opinion is not persuasive was supported by substantial evidence in the record.

**C. Whether the ALJ's assessment of Theresa S.'s subjective complaints was supported by substantial evidence.**

Theresa S. argues that the ALJ erred in finding that Theresa S.'s subjective complaints "concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 19.) As I explain further *infra*, I find that the ALJ fulfilled his obligation to evaluate Theresa S.'s allegations in the context of the record evidence and afford him due deference in determining the extent to which Theresa S.'s complaints were consistent with the record before him.

The Social Security Act is clear that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]" 42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. § 404.1529(a) (same). In evaluating a claimant's subjective complaints, the ALJ considers evidence from physicians; the claimant's daily activities; and descriptions of symptoms, medication, and other treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *2-4. The ALJ also considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ is given great discretion in evaluating a claimant's subjective complaints, and such findings are entitled to great deference. *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014).

As an initial matter, the ALJ did credit Theresa S.'s allegations where they were consistent with the medical evidence in the record. The ALJ found

18

that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 19.) However, the ALJ appropriately considered the entire body of evidence before him and noted where he found inconsistencies between the medical record and the "intensity, persistence and limiting effects" of Theresa S.'s alleged symptoms. (*Id.*) Theresa S. points to five of the inconsistencies the ALJ identified and argues that the ALJ's reasoning and findings were not supported by substantial evidence. For the following reasons, and affording the ALJ due deference in making these determinations, I find that they were supported by substantial evidence.

*First*, Theresa S. takes issue with the ALJ's observation that "the claimant testified that she has taken psychotropic medications for many years [but] has been able to engage in substantial gainful activity for many years through 2017, when she lost her job." (R. 20.) She argues that this conclusion fails to address the worsening of her condition after a traumatizing car accident in September 2018. I find that the ALJ's analysis was reasonable. Theresa S. seems to imply by her argument that given the current state of her condition, she would no longer be able to work while medicated in the same way she did in previous years. But there is nothing in the medical record to support such a conclusion. Moreover, the ALJ accounted for the effects of Theresa S.'s medication when he incorporated environmental limitations in his RFC assessment. (R. 18 ("She must avoid all exposure to hazards such as machinery and heights."); R. 21 ("I also incorporated environmental limitations, with respect to exposure to heights and dangerous machinery, due to panic attacks and the sedating side effects of her medications.")) I find that the ALJ properly considered the effects of Theresa S.'s medications and accordingly incorporated his findings into the RFC assessment.

*Second*, Theresa S. challenges the ALJ's finding that "her complaints of increased symptoms did not prevent her going on vacation in Florida in October 2018." (R. 20.) She contends that the record is not clear whether the trip to Florida was before or after her accident, and that in any event, feeling good enough to travel on one occasion is consistent with the episodic nature of

19

bipolar disorder. (Pl. Br. 41-42.) It appears that Theresa S.'s vacation took place less than two months after her accident. (*See* R. 316 (Treatment notes from Newton Medical Center on December 4, 2018, stating that Theresa S. reported feeling traumatized by her motor vehicle accident that occurred on September 27, 2018, and that she had "*since* been having a hard time with a bad vacation to Florida and a ruined birthday by her brother's girlfriend.") (emphasis added).) To be sure, evidence of a single vacation is not powerful. Nonetheless, I find that it was reasonable for the ALJ to consider it as part of the larger picture when evaluating the persistence and extent of Theresa S.'s alleged symptoms, particularly the severe anxiety she reported.

*Third*, Theresa S. challenges the ALJ's finding that "[w]hile the claimant testified that she continued to experience daily panic attacks, as well as well as difficulty with concentration and focus, subsequent records from the Dr. Klouper of the Highland Psychiatric Associates failed to support her assertions to the degree alleged." (Pl. Br. 41-42.) To support her argument, Theresa S. points to several treatment notes, nearly all of which simply memorialize her own subjective complaints and do not constitute medical evidence.[10] *See Morris v. Barnhart*, 78 F. App'x 820, 824-25 (3d Cir. 2003) ("[t]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion") (citing *Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996)). The only treatment note on which Theresa S. relies that does not necessarily just memorialize her subjective complaints is

---

[10]    Theresa S. relied on the following treatment notes that merely memorialize her subjective complaints:

> "On February 27, 2019, a therapy note states *she reported* three panic attacks the day before. (Tr. 445). On August 1, 2019, *[Theresa S.] sent her therapist a text* that she almost got into another car accident and her "panic attacks are back in 'full force.'" (Tr. 537). On August 21, 2019, *[she] reported to her therapist* that she was afraid to drive for fear of having a panic attack. (Tr. 538).

(Pl. Br. 42 (emphasis added).)

the October 29, 2019 note that states she "continues to have panic attacks and high anxiety especially when driving." (Pl. Br. at 42 (citing R. 540).) Setting aside the fact that this may in fact be yet another memorialization of Theresa S.'s own allegations, it is wholly consistent with the ALJ's reasoning and ultimate determination. In his decision, the ALJ noted that Theresa S. suffers from panic attacks and found that these panic attacks are severe when driving. (R. 21.) The ALJ accordingly took these findings into account when conducting the RFC assessment. (R. 18 ("After careful consideration of the entire record, I find that the claimant has . . . the following nonexertional limitations: She cannot operate a motor vehicle.").) I find that the ALJ properly evaluated Theresa S.'s allegations of severe panic attacks within the context of the medical record before him.

*Fourth*, Theresa S. challenges the ALJ's finding that the notes from her therapist are inconsistent with her complaints of difficulty focusing. (Pl. Br. 41, 43.) In his decision, the ALJ notes that Theresa S.'s alleged difficulty is contradicted by an October 29, 2019 treatment note that states the claimant reported that "while she felt manic, it helped her to accomplish the things she needed to do," and that "she was more productive when she made a list a night and crossed them off the next day after she completed them." (R. 20 (citing R. 540).) I find that the ALJ reasonably concluded that this an inconsistency, as there is clear conflict between what Theresa S. testified to at the hearing and what she reported to her therapist.

*Fifth*, Theresa S. challenges the ALJ's finding that "[w]hile the evidence notes a history of anxiety, bipolar disorder and panic attacks, there is no evidence in this record of recurrent emergency room visits, inpatient hospitalization admissions, or participation in a partial hospitalization program due to exacerbation of her psychiatric symptoms." (R. 20-21). Theresa S. argues that this finding is not supported by substantial evidence, but I find that it is an accurate description of the record. Theresa S. attempts to rebut the ALJ's characterization of her treatment regimen by pointing to 1) a single emergency room visit in December 4, 2018, and 2) a visit with a licensed

21

clinical social worker 0n June 19, 2019 during which "possible hospitalization was discussed due to [Theresa S.]'s depression. (Pl. Br. 43-44.) The occurrence of these two events in no way contradicts the ALJ's finding. I find that the ALJ properly considered Theresa S.'s treatment regimen when determining the severity of her alleged symptoms.

*     *     *

I find that the ALJ properly assessed Theresa S.'s subjective complaints and his findings are supported by substantial evidence in the record.

### D. Whether the ALJ's finding that Theresa S.'s diabetes does not significantly limit her ability to perform basic work activities was supported by substantial evidence.

At Step 2, the ALJ found that Theresa S.'s severe impairments included depression, bipolar disorder, anxiety, and post-traumatic stress disorder. (R. 16 (citing 20 CFR 404.1520(c).) Theresa S. argues that the ALJ erred in Step 2 by finding that her diabetes was not a severe impairment. (Pl. Br. 45-49.)

The ALJ noted that "the claimant has a history of diabetes and high blood pressure currently treated with medication." (R. 16.) Nonetheless, the ALJ found that Theresa S.'s diabetes was not severe. (R. 16.) "The evidence fails to establish an impairment(S) involving diabetes . . . that imposed more than a slight vocational limitation on the claimant's ability to perform work related activity for 12 consecutive months and is not 'severe' as defined in the Regulations." (R. 16.) Alternatively, the ALJ stated that "there is no evidence of recurrent emergency room visits, inpatient hospital admissions or end organ damage due to uncontrolled diabetes or hypertension." (R. 17.)

Theresa S. argues that the ALJ did not properly consider her uncontrolled diabetes at this stage. (Pl. Br. at 45.) She cites a Social Security interpretation rule providing the limited circumstances under which the ALJ can find a claimant to have *no* functional limitations:

> When there is no allegation of physical or mental limitation or
> restriction of a specific functional capacity, and no information in
> the case record that there is such a limitation or restriction, the

adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

*Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (S.S.A. 1996). She argues that the ALJ cannot make such a finding because "the medical evidence documents that her diabetes and hypertension are uncontrolled despite compliance with medications." (Pl. Br. at 46.)

Theresa S.'s arguments regarding the ALJ's step-two analysis are unavailing. First, the claimant has the burden of proof at Step 2 to prove that a disability is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. § 404.1512(a) (stating that the claimant must furnish medical and other evidence that the adjudicator can use to reach conclusions about the claimant's medical impairments). Theresa S. did not furnish evidence to show that her diabetes is severe—*i.e.*, that it "significantly limits [her] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). No treating or examining medical professional suggested that her diabetes resulted in any functional limitation. Moreover, the record shows that prior to the relevant period, Theresa S. was able to perform the medium exertional work of a pet caretaker despite being diagnosed with uncontrolled diabetes at the time. *Compare* R. 347, 348, 349 (noting diagnosis of uncontrolled diabetes), *with* R. 56, 187 (showing Theresa S. performing job duties of pet caretaker during same time period). Theresa S.'s diabetes does not appear to significantly limit her basic work activities and she does not meet her burden of proving that this impairment is severe.[11]

---

[11]    Theresa S. makes an additional argument that the ALJ erred by basing his finding that her diabetes is not severe in part on the fact that the record reflects she did not follow her diet. She suggests that, in so doing, the ALJ failed to comply with SSR 18-3p and SSE 16-3p, which she purports prohibits the ALJ from relying on a claimant's failure to follow treatment as a basis to find her impairment not to be severe. (Pl. Br. at 47.) Given the complete absence in the record of any evidence suggesting that Theresa S.'s diabetes affected her basic work functions, I decline to

Second, even if the ALJ's determination that Theresa S.'s diabetes is not severe was in error, it would be a harmless error because the ALJ did not decide against Theresa S. at Step 2. When an ALJ finds that the claimant has at least one severe impairment, omission of another at Step 2 may be harmless error as long as the impairment would not affect the outcome of the case. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *see Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005). Any error here would be harmless because the medical record is devoid of any evidence that indicates the omitted impairment impacts her ability to perform basic work functions.

In the end, the ALJ's determination that Theresa S.'s diabetes was not a severe impairment was supported by substantial evidence. Even if his Step 2 analysis was not fully developed, any error was harmless. Substantial evidence establishes that the claimant did not meet her burden to show that her diabetes significantly impacted her basic work functions. Given the standard of review, I will uphold the ALJ's finding at Step 2 that Theresa S.'s diabetes is not severe.[12]

---

address whether such reliance was erroneous. Moreover, I note that even if such reliance was improper, it would be harmless error for the reasons expressed *infra*.

[12]    I note that by the end of Theresa S.'s discussion of her claim that the ALJ erred at Step 2 by finding her diabetes not to be severe, her position morphs into an RFC/Step 4 argument, asserting that the ALJ failed "to consider both severe and nonsevere impairments in assessing a claimant's RFC." (Pl. Br. at 47-48 (citing 20 C.F.R. § 404.1545(e)). This argument is meritless given the sheer lack of evidence to support Theresa S.'s claim that her diabetes affects her functional capacity in any meaningful way. To the extent Theresa S. covertly reasserts her RFC argument in the final paragraphs of her brief, I again affirm the ALJ's RFC assessment as I did in Section III.A., *supra*.

## IV.     CONCLUSION

For the reasons set forth above, the Commissioner's decision is

**AFFIRMED**.

A separate order will issue.

Dated: December 27, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**